CHICAGO—FIRST DISTRICT—JUNE, 1915.     449

Lockport Corn Flake Co. v. John A. Tolman & Co., 194 Ill. App. 449.

## Lockport Corn Flake Company, Defendant in Error, v. John A. Tolman & Company, Plaintiff in Error.

### Gen. No. 19,114.   (Not to be reported in full.)

Error to the Municipal Court of Chicago; the Hon. ROBERT H. SCOTT, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Reversed. Opinion filed June 17, 1915.

### Statement of the Case.

Action in the Municipal Court of Chicago by the Lockport Corn Flake Company against John A. Tolman & Company to recover $58.15, alleged to be due for the sale of fifty cases of Gold Medal corn flakes at $1.60 per case. The defendant in its affidavit of merits admitted that it purchased and received such merchandise, but denied that it was indebted to the plaintiff in any amount for the same, and alleged that there had been a complete accord and satisfaction of the claim of the plaintiff. The case was tried before the court without a jury and the plaintiff's damages were assessed and judgment entered thereon for $58.15, from which the defendant appeals.

The facts in the case were that prior to the transaction in question, the Cooked Rolled Oats Company, a corporation, had become indebted to the defendant in the sum of $13.15, and the George R. Walker Company, a partnership (George R. Walker being one of the partners in the same), had also become indebted to the defendant in the sum of $50, "for the benefit of the said Cooked Rolled Oats Company." Early in February, 1912, the plaintiff's agent, the said George R. Walker, called on the defendant for the purpose of selling it a certain brand of corn flakes called "Gold Medal" corn flakes, which had previously been manufactured by the Cooked Rolled Oats Company. The defendant refused to buy any of such corn flakes from

the plaintiff unless it assumed the amounts due to the defendant from the Cooked Rolled Oats Company and the George R. Walker Company. Thereafter, Walker called on the defendant and stated that he was authorized by the plaintiff to make arrangements with the defendant whereby the plaintiff would allow the defendant credit for the items of $13.15 and $50 on its purchases of Gold Medal corn flakes if the defendant would buy its trade requirements of the flakes from the plaintiff. The defendant accepted this proposition and at once gave Walker an order for fifty cases of the flakes at $1.60 per case, and received the same in accordance with such agreement.

Walker testified that the contract he made with the defendant was in accordance with instructions that he received from the general manager of the plaintiff company. After the transaction in question, the defendant gave the plaintiff a second order for flakes, but this order was filled by Walker through another firm, as the plaintiff company had become bankrupt and had gone out of business. On February 22, 1912, the defendant sent to the plaintiff its check for $14.52, together with the following letter and statement:

CHICAGO, Feb. 22, 1912.
"THE LOCKPORT CORN FLAKES CO.,
        Chicago, Ill.

DEAR SIR:
We enclose herewith our check for $14.52 in payment for the following invoices. Please place to our credit and oblige,
            Yours respectfully,
            JOHN A. TOLMAN & COMPANY.

| INVOICE | AMOUNT | DISCOUNT | FREIGHT | NET | REMARKS |
|---|---|---|---|---|---|
| 2/9 | 80.00 | .80 | 1.53 | 14.52 | Frt. Bill Enclosed. |
| | | | Contra Accts. | | $50.00 13.15. |

$63.15."
The plaintiff did not reply to this letter until April

Lockport Corn Flake Co. v. John A. Tolman & Co., 194 Ill. App. 449.

3, 1912, when it sent the defendant a letter acknowledging the receipt of the defendant's letter of February 22nd, and stating in effect that the understanding that it had with Walker, in reference to the arrangement between the parties, was that the defendant was to deduct 10 cents a case for all flakes purchased until the items of $13.15 and $50 "were settled up;" that it had given the account of the defendant "credit for cash $14.52, freight $1.53, discount 80 cents and 10 cents per case special discount, amount to $5, leaving a balance on our books due us of $58.15. If this is not your understanding we would like a letter from you explaining just what you understand the agreement to be with Mr. Walker. We are anxious to get this matter straightened out." The defendant replied to the above letter on April 4, 1912, stating in effect that its understanding of the arrangement was as indicated by the letter and statement of February 22, 1912, and that it had no other understanding with Mr. Walker in reference to the matter. The plaintiff retained the check of the defendant until after the receipt by it of the defendant's letter of April 4th, when it deposited the check in its bank and the same was paid. The plaintiff never answered defendant's letter of April 4th.

ASHCRAFT & ASHCRAFT and ALBERT KOCOUREK, for plaintiff in error; CHARLES F. RATHBUN, of counsel.

No appearance for defendant in error.

MR. JUSTICE SCANLAN delivered the opinion of the court.

### Abstract of the Decision.

1. ACCORD AND SATISFACTION, § 8*—*when accord and satisfaction shown.* Where defendant purchased certain goods upon the strength of an alleged agreement on the part of plaintiff's representative, by which the plaintiff was to assume certain indebted-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

ness due the defendant, and in paying for such goods, defendant deducted from its check the amount of such indebtedness, advising the plaintiff thereof and tendering the check in full payment of the account, and the latter after several weeks delay, acknowledged the receipt of the check, stating its version of the arrangement with the defendant, and requesting the latter to explain its understanding of the agreement, if different, which the defendant did, whereupon plaintiff cashed defendant's check and retained the proceeds without replying to defendant's letter, it was held that the transaction constituted an accord and satisfaction.

2. APPEAL AND ERROR, § 1805*—*when cause not remanded on reversal on merits.* Where the facts are not in dispute but the trial court misinterpreted the law applicable to them, the judgment will be reversed without remanding the case.